**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| AVALON HEALTH CARE, LLC,    ) | |
|                   ) | |
|        Plaintiff,    ) | |
|                   ) | |
|     v.              ) | Case No. 3:06-0631 |
|                   ) | Judge Echols |
| TRUSTMARK INSURANCE COMPANY, ) | |
| and RMTS, LLC            ) | |
|                   ) | |
|        Defendants.   ) | |

**MEMORANDUM**

This is a dispute over stop loss insurance in which Defendants Trustmark Insurance Company ("Trustmark") and RMTS, LLC ("RMTS") have filed a Motion for Judgment on the Pleadings (Docket Entry No. 25). That motion has been fully briefed by the parties. (Docket Entry No. 26, 29 & 32).

## I. FACTS

Plaintiff Avalon Health Care, LLC ("Avalon") maintained an employee benefit plan ("Plan") for certain of its employees. (Complaint, ¶ 5). Avalon and Trustmark entered into stop loss insurance contracts ("Stop Loss Contracts") wherein Trustmark agreed to provide reimbursement for certain claims paid by Avalon under its Plan in excess of a deductible of $50,000 per individual (the Specific Excess Contract), or claims exceeding a contractually agreed-upon level in the aggregate (the Aggregate Excess Contract), upon specified conditions. The parties' agreement was documented

1

in a Letter of Understanding dated May 27, 2004, which provided, in relevant part:

> This letter confirms that Avalon Health Care, LLC has accepted Specific and Aggregate Excess coverage from Trustmark Insurance Company under Contract #JT1118, effective January 1, 2004. Specific coverage will be provided on a 12/15 contract basis (claims incurred from January 1, 2004 to December 31, 2004 and paid from January 1, 2004 to March 31, 2005) covering medical. Aggregate coverage will be provided on a 12/15 contract basis (claims incurred from January 1, 2004 to December 31, 2004 and paid from January 1, 2004 to March 31, 2005) covering medical and prescription drug.

(Complaint, Ex. A).

Avalon employees Lennis Chandler ("Chandler") and Daniel Rouse ("Rouse") were Plan beneficiaries. Both incurred medical claims within the contractual "incurred" period covered by the stop loss contracts, i.e., between January 1, 2004 and December 31, 2004 (Complaint, ¶ 12). Avalon alleges that it paid, through its Third-Party Administrator, HealthSpring Employer Services, Inc. ("HealthSpring"), a total of $95,724.99 in excess of the applicable specific deductibles for claims under the Specific Excess Contract relating to Chandler and a total of $19,081.19 in excess of the applicable specific deductible for claims relating to Rouse. Avalon seeks the combined total – $114,806.18 – as actual damages in this suit. It also seeks damages for Defendants' alleged bad faith refusal to pay. (Complaint, ¶¶ 31, 38).

Avalon asserts that it submitted Chandler's claim to its Plan administrator, HealthSpring Employer Services, Inc.

2

("HealthSpring") on March 17, 2005 and Rouse's claim on March 31, 2005. HealthSpring paid both claims by issuing benefit checks on April 8, 2005.

Because payment was made outside the "paid" window under the parties' agreement which closed on March 31, 2005, Defendants have moved for judgment on the pleadings. Additionally, RMTS asserts it is entitled to judgment because it is not a party to the stop loss contracts, and acted at all times as agent for its disclosed principal, Trustmark. While not arguing against dismissal of RMTS, Avalon asserts that judgment on the pleadings is not appropriate because Part IX(D) of the Stop Loss Contract states that Trustmark "will not refuse to pay Eligible Benefits merely because of the late submission of a claim if it is submitted as soon as reasonably possible." (Complaint, Ex. A at 9).

## II. STANDARD OF REVIEW

A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6). See, Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 511-12 (6th Cir. 2001). Thus, this Court must "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of its claim that would entitle it to relief." Id. at 512.

3

### III.  <u>**LEGAL ANALYSIS**</u>

The parties have identified no factual disputes in this case, making this case amenable to consideration of the present motion for judgment on the pleadings.  Because the Stop Loss Contracts provide that the agreement between the parties will be decided by the laws of the state in which the contracts were delivered and since the contracts were delivered in Tennessee, it is to that body of law which the Court looks in determining whether judgment on the pleading in favor of the Defendants is warranted.

Under Tennessee law, "[t]he central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." <u>Planters Gin Co. v. Federal Compress & Warehouse Co.</u>, 78 S.W.3d 885, 890 (Tenn. 2002).  "The intent of the parties is presumed to be that specifically expressed in the body of the contract." <u>Id</u>.  Thus if a contract is clear and unambiguous, its literal meaning controls. <u>Id</u>.  The interpretation of a written contract is a matter of law for the court.  <u>Jerles v. Phillips</u>, 2006 WL 2450400 at *7 (Tenn. Ct. App. 2006).

In this case, the parties agree that the Stop Loss Contracts and Letter of Understanding represent their agreement.  The Letter of Understanding is unambiguous in terms of the period of claims covered.  Both Specific coverage and Aggregate coverage are required to be provided for "claims incurred from January 1, 2004

4

to December 31, 2004 and paid from January 1, 2004 to March 31, 2005."

In Sizemore v. E.T. Barwick Industries, Inc., 465 S.W.2d 879, 872 (Tenn. 1971), the Tennessee Supreme Court noted that "[t]he word 'payment' has a well defined meaning in the law" and basically requires the delivery of money or its equivalent from one person from whom it is due to another person to whom it is due. Based upon that well-known understanding, the Sixth Circuit, applying Tennessee law, upheld dismissal of an action alleging breach of a stop loss contract which required reimbursement based upon "actual payment" of benefits because that term was not ambiguous. Religious Employees Assoc., Inc. v. Pilot Life Ins. Co., 1984 Lexis 13667 (6th Cir. 1984).

In the present case, Avalon does not take issue with the notion that the meaning of payment (which by definition means "something that is paid") is well-understood or that the term "paid" in the Letter of Understanding is ambiguous. Nor does it suggest that the claim was paid within the time frame required under the Letter of Understanding. Instead, Avalon claims that the contract as a whole is ambiguous because the language of Part IX(D) of the Stop Loss Contracts relating to late submission of a claim "softens" the language relating to a claim being "paid."

A contract is ambiguous when its meaning is uncertain and may fairly be understood in more than one way. Sumner County Bd. of

5

Educ. v. Carden Co., 2006 WL 2069413 at *3 (Tenn. Ct. App. 2006).
In this case, the agreement relating to coverage for claims which
are paid within a specified period is ambiguous in light of Parts
IX(D) and I(F) of the Stop Loss Contracts.

Part IX(D) provides in its entirety:

> The Company shall not be liable for claims that have been
> submitted more than 90 days after the date services were
> Rendered.  The Company will not refuse to pay Eligible
> Benefits merely because of late submission of a claim if
> it is submitted as soon as reasonably possible.  But in
> no event will the Company be liable for claims submitted
> more than one year after the date services were rendered.

(Complaint Ex. A at 9).  Under Part I(F) of the Stop Loss
Contracts, "Eligible Benefits" are defined as "an amount payable
under the terms of the Plan; provided that it is for a claim which
is Rendered when the contract is in force."  (Id.).

In accordance with the second sentence of IX(D) and the
language of I(F), Avalon argues that Rouse's and Chandler's claim
were payable under the Plan and "submitted as soon as reasonably
possible." Defendants do not dispute this proposition.  Instead,
their argument is that the claims, though submitted in a timely
fashion, are not covered because they were not "*paid*" by Avalon by
March 31, 2005, as specifically required by the Letter of
Understanding.

"A primary objective in the construction of a contract is to
discover the intention of the parties from a consideration of the
whole contract."  Sumner County, 2006 WL 2069413 at *1.  "All

6

provisions of a contract should be construed as in harmony with each other, if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." Id.

The Letter of Understanding states the parties' agreement that claims must be paid between January 1, 2004 and March 31, 2005 in order to be considered for reimbursement. Part IX(D) can be read as placing a gloss on what would otherwise be a firm cut-off date by providing that late submission of a claim does not necessarily doom a claim, so long as the claim is submitted as soon as reasonably possible.

While Defendants assert that late claims submissions is an issue wholly distinct from the time frame required for making payments and the question of whether a given claim meets the definition of a covered claim under the Letter of Understanding, contracts must be read as a whole. Harrell v. Minnesota Mut. Life Ins. Co., 937 S.W.3d 809, 813 (Tenn. 1996). Also, ambiguities are to be construed against the drafter, Vantage Tech. LLC v. Cross, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999), which in this case is Defendant(s). Since the contract can be read as allowing the claims in this case because they were claims for "Eligible Benefits" under I(F) and presumably submitted in a reasonable time under IX(D), judgment on the pleadings is not warranted.

Apart from the language of the parties' agreement, Defendant

7

RMTS claims it is entitled to dismissal because it was a disclosed agent for Trustmark and it had no contractual relationship with Avalon. While the Stop Loss Contracts identify Trustmark as "the company" underwriting the insurance, the Letter of Understanding is on RMTS's letterhead.

There has been no specific proof of the relationship between RMTS and Trustmark or RMTS and Avalon. At this stage, the Court must accept as true the allegations in the Complaint which state that both Defendants agreed to provide stop loss coverage to Avalon. This conclusion, of course, does not prevent either party from later seeking leave to dismiss RMTS if, in fact, it was not a party to the agreement in this case.

## IV. CONCLUSION

On the basis of the foregoing, Defendants' Motion for Judgment on the Pleadings (Docket Entry No. 25) will be denied and an appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE

8